UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAMOND C. DALEY,

                               Plaintiff,

    -against-

CASCADES HOLDING US INC., CASCADES USA
INC., d/b/a CASCADES USA INDUSTRIES, JOSEPH
SERAFINI, PHILIPPE BOURASSA and DIANA WOLFE

                             Defendants.

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Civil Case No.:

  1:22-cv-01012 (MAD/TWD)

      DAMOND C. DALEY, Plaintiff in the above-entitled action, by and through his attorneys,

The Towne Law Firm, P.C., as and for a Complaint herein, respectfully alleges the following upon

information and belief:

### PARTIES

      1.     At all times herein relevant, Plaintiff, DAMOND C. DALEY, (hereinafter

referred to as "Plaintiff"), was and is a resident of the City of Albany, County of Albany, State of

New York.

      2.     Upon information and belief, at all times herein relevant, Defendant, CASCADES

HOLDING US INC., was and is a foreign business corporation duly organized and existing under

the laws of the State of Delaware with a place of business at 510 South Main Street, Mechanicville,

New York 12118.

      3.     Upon information and belief, at all times herein relevant, Defendant CASCADES

USA, INC, d/b/a CASCADES USA INDUSTRIES, was and is a foreign business corporation duly

organized and existing under the laws of the State of Delaware with a place of business at 510

South Main Street, Mechanicville, New York 12118.

      4.     Cascades Holding US Inc. and Cascades USA Inc. d/b/a Cascades USA Industries

collectively will hereinafter be referred to as "Defendant Cascades".

5.     Upon information and belief, Defendant Joseph Serafini (hereinafter referred to as "Defendant Serafini"), was and is a resident of Schenectady County, State of New York.

6.     Upon information and belief, Defendant Philippe Bourassa (hereinafter referred to as "Defendant Bourassa"), was and is a resident of Saratoga County, State of New York.

7.     Upon information and belief, Defendant Diana Wolfe (hereinafter referred to as "Defendant Wolfe"), was and is a resident of Albany County, State of New York.

8.     Defendants Serafini, Wolfe and Bourassa, collectively, will hereinafter be referred to as "Defendant Employees."

9.     Defendant Cascades and Defendant Employees, collectively, will hereinafter be referred to as "Defendants."

## JURISDICTION AND VENUE

10.     This is an action for Federal claims upon violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq ("Title VII") and the American with Disabilities Act ("ADA") 42 U.S.C. § 12112. This action also asserts supplemental claims pursuant to the statutory and common law of the State of New York.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under 42 U.S.C. § 2000e et seq and 42 U.S.C. § 12112. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under New York Law are so related that they form part of the same case or controversy which give rise to his Title VII, and Title I claims

12.     Venue is properly laid in the Northern District of New York pursuant to 28 U.S.C.§ 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in the

Town of Halfmoon, County of Saratoga, State of New York, which is situated in the Northern District of New York.

**JURY DEMAND**

13.     Plaintiff hereby demands a jury trial on any and all triable issues raised in his Complaint by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

14.     On or about March 3, 2022, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), *pro se*, alleging discrimination by Defendants based on his disabilities and race, and retaliation for the same. The complaint was assigned Charge No. 525-2022-00953. A true and accurate copy of Plaintiff's EEOC Charge is attached hereto as Exhibit "A."

15.     On or about June 28, 2022, the EEOC issued a Notice of Right to Sue, entitling Plaintiff to commence an action within ninety (90) days of the date of receipt of the notice. A true and accurate copy of the EEOC's Notice of Right to Sue is annexed hereto as Exhibit "B."

16.     This action is commenced within ninety (90) days of Plaintiff's receipt of his Notice of Right to Sue from the EEOC.

17.     Plaintiff has exhausted all required administrative remedies prior to filing suit on his claims.

**STATEMENT OF FACTS RELEVANT TO ALL CLAIMS**

18.     At all times herein relevant, Plaintiff was and is a Black, disabled, United States Navy veteran.

19.     At all times herein relevant, Plaintiff was an employee of Defendant Cascades within the meaning of 42 U.S.C. § 2000e(f), 42 U.S.C. § 12111(4) and the New York State Human Rights Law ("NYSHRL").

20.     At all times herein relevant, Defendant Cascades were "employers" within the meaning of the NYSHRL § 8-102(5), 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5).

21.     At all times herein relevant, Defendant Cascades is engaged in commerce within the meaning of 42 U.S.C. § 2000e(g).

22.     Plaintiff is a "person of color" and is entitled to all the protections afforded thereby pursuant to Title VII and NYSHRL.

23.     Upon information and belief, at all times herein relevant, Plaintiff's immediate supervisor was Defendant Serafini, Defendant Cascades' Maintenance Manager.

24.     Upon information and belief, at all times herein relevant, Defendant Bourassa was employed as Defendant Cascades' Plant Manager.

25.     Upon information and belief, at all times herein relevant, Defendant Wolfe was employed as Defendant Cascades' Human Resource ("HR") Manager.

26.     Upon information and belief, as Defendant Cascades' HR Manager, Defendant Wolfe had the ability to hire and fire personnel.

27.     At the time of Plaintiff's hiring by the Defendant Cascades it was known that he was a person of color and the nature and extent of his medical disabilities.

28.     On or about November 8, 2021, Plaintiff was hired by Defendant Cascades as a Welder and was able to perform all essential duties of his position.

29.     Defendants were aware of Plaintiff's various disability diagnoses from the moment he was hired as Plaintiff told the interviewer that he had Post Traumatic Stress Disorder ("PTSD"), and of his need for regular doctor's visits regarding his health and wellness, prior to being offered a position.

30.     During Plaintiff's interview with Defendant Cascades, Plaintiff explained that he

was discriminated against at his prior employer as jokes were regularly made regarding Plaintiff's race.

31.     Defendant Serafini was present at Plaintiff's interview.

32.     During the course of Plaintiff's employment with Defendant Cascades, Plaintiff was subjected to harassment and unfair treatment by the Defendants on the basis of Plaintiff's race and disabilities, which harassment and unfair treatment created a hostile work environment.

33.     Plaintiff was retaliated against by Defendants for attending and/or scheduling doctor's appointments during the workday.

34.     Plaintiff had informed Defendants of his need to periodically take time off for doctor's appointments during an interview prior to his hiring.

35.     Plaintiff routinely provided Defendants with forty-eight (48) hours' notice of his need to take time off for doctors' appointments.

36.     On or about January 17, 2022, upon being informed by Plaintiff of his need to take time off for a medical appointment, Defendant Serafini replied to Plaintiff in a text message as follows: "This can not [sic] continue."

37.     Upon information and belief, Defendants did not penalize other employees for taking time off for doctors' appointments.

38.     Plaintiff was also told that Defendant Serafini wanted to fire Plaintiff because he was taking too much time off for doctors' appointments.

39.     The doctors' appointments Plaintiff scheduled were necessary to treat his PTSD diagnosis.

40.     Immediately following this text message conversation on January 17, 2022 with Defendant Serafini, Plaintiff began to experience aggressive behavior, actions, and comments from

Defendant Serafini and Defendant Bourassa.

41.     On or about January 18, 2022, Plaintiff was castigated by Defendant Serafini regarding contentions surrounding his parked car.

42.     Upon information and belief Defendant Serafini mislead others by stating that Plaintiff had left his vehicle in such a place that it impeded the flow of trucks and other vehicles entering and exiting the premises.

43.     Upon information and belief, Defendant Serafini submitted a report about the parking of Plaintiff's vehicle to Defendant Wolfe.

44.     Upon information and belief, Defendant Serafini did not mislead others or report other white employees for alleged similar events.

45.     Upon information and belief, Defendant Cascades previously employed a Latino Welder who did not work for Defendant Cascades long due to the discriminatory actions and racial comments towards him by Defendant Serafini.

46.     Upon information and belief, Defendant Serafini did not engage in similar actions regarding other employees.

47.     Upon information and belief Defendant Serafini and Defendant Cascades historically treated people of color less favorably than white employees.

48.     Defendant Cascades held morning meetings each workday. Plaintiff attended approximately sixty (60) morning meetings while employed by Defendant Cascades.

49.     During the morning meetings held each workday, and while Plaintiff was present, racist, and sexist jokes and comments were made at many such meetings by employees of Defendant Cascades. Defendant Cascades did nothing to stop such behavior although the same was complained of by Plaintiff to Defendant Wolfe, all to no avail.

50.     While employed by Defendant Cascades, Plaintiff was subjected to racial jokes made by an employee of Defendant Cascades regarding the song "Black Betty."

51.     Upon information and belief, Defendant Serafini's impermissible and incorrigible treatment of Plaintiff was based upon Plaintiff's status as a disabled person of color.

52.     Upon information and belief, on January 20, 2022, Defendant Serafini again fabricated a story and falsely reported to Defendant Bourassa that Plaintiff failed to complete a work order given to him by Defendant Serafini. Such report was a contrivance as Defendant Serafini had never given the work order to Plaintiff.

53.     Upon information and belief, Defendant Serafini gave that particular work order to the Head of Safety instead of Plaintiff.

54.     Plaintiff reported each instance of discrimination and racial comment made by Defendant's Serafini and Bourassa and other employees of Defendant Cascades to Defendant Wolfe in her capacity as Defendant Cascades' HR Manager.

55.     Upon information and belief, on or about January 20, 2022, Plaintiff was subject to an unwarranted and harassing investigation due to wearing his boxing attire as the Defendant Bourassa said he was dressed in a fashion to "intimidate them."

56.     Upon information and belief, on are about January 21, 2022, Defendant Serafini sabotaged Plaintiff's safety guards, a welding safety measure, the subject of the work order discussed hereinabove.

57.     Upon information and belief, on January 24, 2022, following the above interactions between Plaintiff and Defendant Serafini, Plaintiff was called to a meeting with Defendant Employees.

58.     At this meeting, Defendant Bourassa confronted Plaintiff, telling him that he was

behaving insubordinately towards Defendant Serafini.

59.     Upon information and belief, Defendant Bourassa then stated to Plaintiff the following: "I know people like you. You lie, you steal, you intimidate people, and you try to manipulate words."

60.     Upon information and belief, when Plaintiff asked what Defendant Bourassa meant by said statement, Defendant Bourassa menacingly stood up from his seat and shouted at him: "You lie, you cheat, you steal, and you try to manipulate words."

61.     Upon information and belief, Plaintiff then stood up from his seat, fearing that he would have to defend himself from Defendant Bourassa, and asked Defendant Bourassa for the reasons why he thought it was okay to speak to him in such a manner.

62.     Upon information and belief, Defendant Bourassa then sat down and verbally placed Plaintiff on suspension in retaliation for reacting to Defendant Bourassa's discriminatory comments.

63.     Upon information and belief, Plaintiff was never given notice of this suspension in writing.

64.     Upon information and belief, Defendant Cascades terminated Plaintiff's employment during a meeting on or about January 28, 2022, in retaliation for his complaints against Defendants Bourassa and Serafini.

65.     Upon information and belief, Defendant Cascades' HR representative told Plaintiff verbally during said meeting that he was being terminated due to his response to Defendant Bourassa's discriminatory and retaliatory statements.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST DEFENDANT CASCADES**
**(Discrimination and Harassment in Violation of Title VII of the Civil Rights Act of 1964)**

66.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "65" as if the allegations were set forth herein in their entirety.

67.     Defendant Cascades, through its agents and employees, discriminated against Plaintiff in his employment by subjecting him to a hostile work environment on account of his race, ethnicity and national origin, and by subjecting Plaintiff to unequal terms and conditions of employment.

68.     While at the premises of Defendant Cascades, Defendants Serafini and Bourassa treated Plaintiff disparately and made comments directed towards Plaintiff based upon his race, ethnicity, or national origin.

69.     Defendant Cascades failed to take any action to stop the unlawful discrimination and harassment from occurring once notified of this unlawful discrimination from continuing to occur.

70.     Defendant Cascades, through its agents and employees, wrongfully suspended and terminated Plaintiff because of his race, ethnicity, or national origin.

71.     As a direct result of the unlawful actions of Defendant Cascades, Plaintiff has suffered and will continue to suffer emotional and psychological trauma, distress, humiliation, and embarrassment, as set forth above.

72.     As a direct result of Defendant Cascades' retaliatory termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer loss of income, loss of employment benefits, loss of career opportunities, damage to his reputation, humiliation, emotional distress, pain and suffering.

73.     Based upon the foregoing, Defendant Cascades is liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, Plaintiff's attorney fees, costs, and disbursements of this action.

74.     Defendant Cascades' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANT CASCADES
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)

75.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "74" as if the allegations were set forth herein in their entirety.

76.     Defendant Cascades, through its agents and employees, wrongfully terminated Plaintiff's employment in retaliation for his complaints of discrimination and harassment as set forth hereinabove.

77.     Title VII forbids and employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by Title VII, or the employee's participation in "an investigation, proceeding, or hearing under Title VII. 42 U.S.C.§ 2000e-3(a).

78.     Plaintiff opposed practices made unlawful when he complained to Defendant Wolfe about the discriminatory, harassing, offensive and unwanted conduct of Defendant Bourassa and Defendant Serafini, which are protected activities under Title VII.

79.     Plaintiff was placed on suspension for defending himself against Defendant Bourassa's discriminatory statements and was terminated in retaliation for the same.

80.     Defendant Cascades, through its agents and employees, wrongfully terminated Plaintiff's employment in retaliation for his complaints of discrimination and harassment as set forth in the preceding factual paragraphs.

81.     There is a causal connection between Plaintiff's protected activities and the decision to terminate his employment.

82.     Defendant Cascades lacked any legitimate business reason or justification for terminating Plaintiff's employment.

83.     As a direct result of Defendant Cascades' retaliatory termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer loss of income, loss of employment benefits, loss of career opportunities, damage to his reputation, humiliation, emotional distress, pain and suffering.

84.     Based upon the foregoing, Defendant Cascades is liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, Plaintiff's attorney fees, costs, and disbursements of this action.

85.     Defendant Cascades' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANT CASCADES**
**(Violation of the ADA – Denial of Reasonable Accommodation**)

86.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "85" as if the allegations were set forth herein in their entirety.

87.     At all times herein relevant, Plaintiff was an employee and Defendants Cascades,

his employer, whose employment was covered by and within the meaning of the ADA.

88.     At all times herein relevant, Plaintiff was and is an individual with a disability within the meaning of 42 U.S.C. 12102 § (2).

89.     Plaintiff is a qualified individual with a disability as defined by the ADA.

90.     Plaintiff's PTSD diagnosis substantially limits one or more major life activities  for him.

91.     As mentioned herein, at the time Plaintiff was hired, Defendants were aware of Plaintiff's PTSD diagnosis.

92.     While employed by Defendant Cascades, Plaintiff was qualified to perform the essential duties of a Welder, with or without an accommodation.

93.     Plaintiff had regularly scheduled doctor's appointments to treat his PTSD.

94.     Defendant Cascades had notice of Plaintiff's disability and failed to provide any reasonable accommodation to Plaintiff to take off time for his medical appointments for disability-related treatment.

95.     Defendant Cascades fired Plaintiff because of his requests for medical appointments to treat his disability.

96.     By doing so, Defendant Cascades violated the ADA.

97.     Plaintiff seeks damages and all other forms of relief available under the ADA, including attorney's fees.

98.     Based upon the foregoing, Defendant Cascades is liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, Plaintiff's attorney fees, costs, and disbursements of this action.

99.     Defendant Cascades' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST DEFENDANT CASCADES
**(Violation of the ADA – Wrongful Termination)**

100.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "99" as if the allegations were set forth herein in their entirety.

101.    As previously set forth, Plaintiff is an individual with a disability within the meaning of the ADA.

102.    Plaintiff's PTSD diagnosis substantially limits one or more major life activities.

103.    As mentioned herein, at the time Plaintiff was hired Defendants were aware of Plaintiff's PTSD diagnosis.

104.    While employed by Defendant Cascades, Plaintiff was qualified to perform the essential duties of a Welder, with or without an accommodation.

105.    Plaintiff regularly needed time off for medical appointments for disability-related treatment.

106.    After taking off time for necessary medical appointments, Plaintiff was subjected to increased aggression and ostracism by Defendant Serafini.

107.    Defendant Cascades termination of Plaintiff's employment was because of Plaintiff's disability in violation of the ADA.

108.    As a direct and proximate cause of Defendant Cascades willful, knowing and intentional discrimination against Plaintiff, Plaintiff has suffered and will continue to suffer pain, suffering, mental anguish, emotional distress, loss of earnings, job opportunities, employment

benefits and other incidental expenses.

109.     Based upon the foregoing, Defendant Cascades is liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, Plaintiff's attorney fees, costs, and disbursements of this action.

110.     Defendant Cascades' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT CASCADES AND DEFENDANT WOLFE
**(Violation of NYSHRL, N.Y. Executive Law § 296 (1) – Discrimination and Harassment)**

111.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "110" as if the allegations were set forth herein in their entirety.

112.     Pursuant to the NYSHRL, it is unlawful for an employer to discriminate or subject any individual to harassment because of the individual's disability.

113.     At all times herein relevant, Plaintiff was and is an individual with a disability within the meaning of the NYSHRL.

114.     Plaintiff is a qualified individual under the NYSHRL who can perform the essential function of his job with or without reasonable accommodation.

115.     Defendant Cascades had notice of Plaintiff's disability diagnosis as it was disclosed by Plaintiff when he was hired, however, Defendant Cascades failed to provide any reasonable accommodation for Plaintiff's necessary medical appointments.

116.     By failing to provide reasonable accommodations to Plaintiff, Defendant Cascades violated the NYSHRL.

117.     Defendant Cascades knew and/or should have known that Plaintiff was subject to

a discrimination and harassment through its agents and employees, including Defendant Employees.

118.    As a direct and proximate result of Defendant Cascades' and Defendant Wolfe's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and economic harm for which he is entitled to an award of monetary damages and other relief.

119.    Based upon the foregoing, Defendant Cascades and Defendant Wolfe are liable, and Plaintiff is entitled to judgment against Defendant Cascades and Defendant Wolfe in an amount to be determined at trial, together with interest thereupon, Plaintiff's attorney fees, costs, and disbursements of this action.

120.    Defendant Cascades' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST DEFENDANT CASCADES AND DEFENDANT WOLFE
**(Violation of NYSHRL, N.Y. Executive Law § 296 (1) – Discrimination and Harassment)**

121.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" as if the allegations were set forth herein in their entirety.

122.    Pursuant to the NYSHRL, it is unlawful for an employer to discriminate or subject any individual to harassment because of the individual's race, color, or national origin.

123.    Plaintiff is a black male and is therefore, a member of a group protected by the NYSHRL.

124.    Defendant Cascades, through its agents and employees, discriminated against Plaintiff in his employment by subjecting him to a hostile work environment on account of his

race, ethnicity, and national origin, and by subjecting Plaintiff to unequal terms and conditions of employment.

125.     Upon information and belief, Plaintiff was suspended and terminated due to his race, color, or national origin.

126.     Defendant Cascades and Defendant Wolfe knew and/or should have known that Plaintiff was subject to a hostile work environment through its agents and employees, including Defendant Employees.

127.     As a direct and proximate result of Defendant Cascades' and Defendant Wolfe's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and economic harm for which he is entitled to an award of monetary damages and other relief.

128.     Based upon the foregoing, Defendant Cascades and Defendant Wolfe are liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, Plaintiff's attorney fees, costs, and disbursements of this action.

129.     Defendant Cascades' and Defendant Wolfe's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AGAINST DEFENDANT CASCADES AND DEFENDANT WOLFE
**(Violation of NYSHRL, N.Y. Executive Law § 296 (7) - Retaliation)**

130.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "129" as if the allegations were set forth herein in their entirety.

131.     Plaintiff reported the discriminatory behavior of Defendant Serafini directed

towards Plaintiff to Defendant Wolfe and other Defendant Employees.

132.   Defendants Serafini and Wolfe directly witnessed Defendant Bourassa's discriminatory and harassing actions toward Plaintiff during the meeting held on January 24, 2022 with Plaintiff and Defendant Employees.

133.   Plaintiff's filing of the reports and claims of discrimination which he was enduring referenced above constituted "protected activities" under the NYSHRL.

134.   The Defendant Cascades and Defendant Wolfe, knowing of Plaintiff's participation in the aforesaid protected activities, unlawfully retaliated against Plaintiff for his complaints of discrimination and harassment by taking adverse employment actions against him, including, but not limited to, bullying and harassing Plaintiff, suspending Plaintiff, and ultimately wrongfully terminating Plaintiff's employment.

135.   Defendant Cascades and Defendant Wolfe took adverse and retaliatory employment actions against Plaintiff as a direct, causal result of Plaintiff's participation in the aforesaid protected activities and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

136.   As a direct and proximate result of Defendant Cascades' and Defendant Wolfe's retaliatory acts, Plaintiff has suffered and continues to suffer monetary, and/or economic damages, including but not limited to, loss of past and future income and retirement benefits for which Plaintiff is entitled to an award of damages.

137.   Based upon the foregoing, Defendant Cascades and Defendant Wolfe are liable, and Plaintiff is entitled to judgment against Defendant Cascades and Defendant Wolfe in an amount to be determined at trial, together with interest thereupon, Plaintiff's attorney fees, costs, and disbursements of this action.

138.     Defendant Cascades' and Defendant Wolfe's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### AGAINST DEFENDANT EMPLOYEES
**(Violation of NYSHRL, N.Y. Executive Law § 296 (6) - Aiding and Abetting)**

139.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "138" as if the allegations were set forth herein in their entirety.

140.     Defendant Cascades, through its agents and employees, discriminated against Plaintiff in his employment by subjecting him to a hostile work environment on account of his race, ethnicity and national origin.

141.     Defendant Cascades knew and/or should have known that Plaintiff was subjected to a hostile work environment through its agents and employees, including Defendant Employees.

142.     Defendant Employees directly participated and aided, abetted, incited, compelled and coerced discrimination, harassment and retaliation against Plaintiff on account of his race, ethnicity and national origin in violation of the NYSHRL.

143.     As a result of Defendant Employees' aforesaid acts, Defendant Employees have aided, abetted, incited, compelled and coerced acts forbidden under the NYSHRL, N.Y. Executive Law § 296 (6).

144.     As a result of the Defendant Employees' discriminatory acts, Plaintiff suffered damage, including without limitation, termination, loss of income, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to his reputation and career.

145.     As a result of Defendant Employees' aiding and abetting Defendant Cascades'

violations of the NYSHRL, Plaintiff is entitled to the maximum monetary damages and penalties available by law against Defendant Employees, as well as costs, attorney's fees, and other recoverable damages.

146.     Based upon the foregoing, Defendant Employees is liable, and Plaintiff is entitled to judgment against Defendant Employees in an amount to be determined at trial, together with interest thereupon, Plaintiff's attorney fees, costs, and disbursements of this action.

147.     Defendants Employees' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN NINTH CAUSE OF ACTION
## AGAINST DEFENDANT CASCADES
### (Negligent Hiring, Retention, and Supervision)

148.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "147" as if the allegations were set forth herein in their entirety.

149.     Defendant Employees discriminated against Plaintiff on the basis of his race while employed and on the premises of Defendant Cascades.

150.     Upon information and belief, Defendant Cascades had notice of Defendant Serafini's lack of fitness for his position as Plaintiff reported his concerns about Defendant Serafini's actions and behaviors towards him to Defendant Wolfe in her capacity as the HR Manager of Defendant Cascades.

151.     The aforesaid failures constitute negligence in the supervision or training of Defendant Serafini on the part of Defendant Cascades.

152.     Defendant Cascades failed to prevent discriminatory practices thereby failing to insure all employees have a safe workplace.

153.    Defendant Cascades, by its agents, servants and/or employees have failed to comply with non-delegable duties to Plaintiff, and such failure has caused injuries to Plaintiff.

154.    Said injuries were in no way contributed to by Plaintiff.

155.    The Plaintiff is therefore due compensation from the Defendant.

156.    Based upon the foregoing, Defendant Cascades is liable, and Plaintiff is entitled to judgment against Defendant Cascades in an amount to be determined at trial, together with interest thereupon, Plaintiff's attorney fees, costs, and disbursements of this action.

### AS AND FOR A TENTH CAUSE OF ACTION
### AGAINST DEFENDANTS
**(Intentional Infliction of Emotional Distress)**

157.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "156" as if the allegations were set forth herein in their entirety.

158.    Defendants Cascade vested in Defendant Employees the responsibility to manage and/or work with Plaintiff as an employee of Defendant Cascades.

159.    Acting under the authority vested in them by Defendant Cascades, Defendant Employees intentionally and recklessly violated both state and federal law when they intentionally discriminated against Plaintiff by causing and permitting a hostile work environment to exist which significantly and adversely altered the terms, conditions and privileges of the Plaintiff's employment with Defendant Cascades.

160.    Defendant Employees, acting within the scope of their employment with Defendant Cascades, engaged in extreme and outrageous courses of conduct, well outside the bounds of human decency, which intentionally caused Plaintiff to endure severe emotional distress.

161.    As a result of Defendant Employees' actions, Plaintiff has sustained damages in an amount which exceeds the jurisdictional limit of all courts of lower jurisdiction.

162.    Defendant Cascades is vicariously liable for the damages caused by its employees

who were acting within the scope of their employment.

163.   Based upon the foregoing, Plaintiff is further entitled to judgment against the Defendants in an amount to be proven at trial, together with Plaintiff's attorney fees, costs and disbursements in connection with this action and interest thereon.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants,

(a) On the First Cause of Action Against Defendant Cascades, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(b) On the Second Cause of Action Against Defendant Cascades, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(c) On the Third Cause of Action Against Defendant Cascades, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(d) On the Fourth Cause of Action Against Defendant Cascades, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(e) On the Fifth Cause of Action Against Defendant Cascades and Defendant Wolfe, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(f) On the Sixth Cause of Action Against Defendant Cascades and Defendant Wolfe, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(g)  On the Seventh Cause of Action Against Defendant Cascades and Defendant Wolfe, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(h)  On the Eighth Cause of Action Against Defendant Employees, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(i)  On the Ninth Cause of Action Against Defendant Cascades, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(j)  On the Tenth Cause of Action Against Defendants, awarding damages to Plaintiff in an amount to be determined at trial, together with interest thereupon, compensatory damages, back pay, and punitive damages;

(k)  Awarding Plaintiff's attorney's fees, costs and disbursements in connection with this action;

(l)  Together with interest upon the amount(s) awarded; and

(m) Together with such other and further relief as this Court deems just and proper.

DATED:        September 26, 2022
              Albany, New York

                                    Respectfully submitted,

                                    /s/ James T. Towne, Jr. Esq._____
                                    James T. Towne, Jr., Esq. Bar Roll No.: 601203
                                    *Attorneys for Plaintiff*
                                    The Towne Law Firm, P.C.
                                    500 New Karner Road
                                    Albany, New York 12212-5072
                                    Telephone: (518) 452-1800
                                    Fax: (518) 452-6423
                                    E-mail: james.towne@townelaw.com